[File No. 7213]

KATHRYN GALLAGHER, Respondent, v. STANLEY
GALLAGHER, Appellant.

(44 NW2d 487)

Opinion filed September 11, 1950

*Walter O. Burk,* for appellant.
*Ella Van Berkom,* for respondent.

Per Curiam. Plaintiff brought this action for support and
maintenance. It is alleged in the complaint that the plaintiff
and defendant were married on March 2, 1942, and have been
and are husband and wife and that there are no children issue
of the marriage. That at the time of the marriage the plaintiff
had a minor daughter by a former marriage eleven years of
age, and that the defendant accepted the daughter into his home
and agreed that he would adopt her. It is further alleged that
the defendant is employed and has been employed by the Great
Northern Railway Company and has earned sufficient money to
support the plaintiff as well as the minor child and that he has
failed, neglected and refused to support the plaintiff or estab-
lish a home for her. It is also alleged that (in October 1944)
the defendant went to Billings, Montana, to work but made no
arrangement for the plaintiff to live there; that some months
later he plaintiff moved to Billings and that she advanced $600
of her own money for expenses for the moving of their furni-

ture to Billings and for living expenses for herself and her minor child. It is further alleged "that in 1947 a divorce was started; that the defendant contested said divorce and that a property settlement was entered into by which the defendant agreed to pay to the plaintiff the sum of $800.00, $600.00 of which plaintiff had previously advanced to the defendant for the purpose of moving plaintiff and defendant and their furniture to Billings, Montana, and as living expenses during said moving period; that thereafter and before said divorce could be granted, the defendant came to the home of the plaintiff and asked for a reconciliation; that there was a reconciliation between plaintiff and defendant at which time they commenced to live together as man and wife." It is further alleged that the defendant is well and able-bodied and earns enough money to support the plaintiff and that she has not been able to earn sufficient money to support herself and minor child and to maintain the home.

The defendant interposed an answer and cross-complaint. The answer denies generally the allegations of the complaint except as qualified, admitted or explained. It alleges that after the marriage a joint bank account was established and that all of defendant's salary checks were deposited in such account and that the plaintiff at all times had the right to and did draw upon such account for the purpose of paying living and other expenses. The answer admits that the defendant went to Billings, Montana, on or about October 25, 1944, where he went into business; and alleges that it was impossible because of lack of housing facilities to find a place for the plaintiff and defendant to live and that he requested the plaintiff to remain in Minot until he could find a suitable place to live, that nevertheless the plaintiff came to Billings and that they lived together there until it became necessary for them to vacate the quarters they were occupying. That they were unable to secure other quarters in Billings except in a tourist cabin in which the plaintiff refused to live and that thereupon she returned to Minot where she since has resided. The answer further alleges that the plaintiff is an experienced and able-bodied saleslady and is regularly employed at a salary of at least $200 per month; that the defendant has

a wooden leg and one of his hands is partially paralyzed, that for a number of years he has been afflicted with diabetes. By way of cross-complaint the defendant alleges that the plaintiff has been guilty of extreme cruelty toward the defendant in certain respects which it is not necessary to relate. He further alleges that the plaintiff and defendant heretofore entered into a written property agreement whereby the defendant agreed to pay the plaintiff the sum of $800 in cash, the entire sum of which has been paid; that said property settlement is in full force and effect. The defendant prays judgment that plaintiff's action be dismissed and that he be granted an absolute divorce from the plaintiff. The plaintiff interposed a reply to the answer and cross-complaint. She specifically denies that the separation agreement is in force and effect and alleges that after such agreement was made the parties effected a reconciliation and resumed the marriage relations. She denies that she earns $200 per month and states that her salary does not exceed $120 per month. The case was tried upon the issues so framed by the pleadings. Upon the trial it was agreed between counsel for the respective parties that the plaintiff might file an amended complaint asking for divorce on the ground of nonsupport. Such complaint was filed and the trial court made findings of fact and conclusions of law in favor of the plaintiff for divorce and for an allowance to the plaintiff of $1200, to be paid at the rate of $50 per month for two years, and for a certain amount for attorneys fees and costs. Judgment was entered accordingly and the defendant has appealed from that part of the judgment which awards judgment in favor of the plaintiff and against the defendant for $1200 and $158.90 for attorneys fees and costs, making a total judgment of $1358.90. No appeal is taken from that part of the judgment which granted the plaintiff a divorce.

The evidence shows that the plaintiff and defendant are both citizens of the United States and are and have been residents of the State of North Dakota for more than twelve months immediately preceding the commencement of the action. The plaintiff and defendant were married at Minot, North Dakota,

on March 2, 1942. There were no children issue of the marriage. At the time of their marriage plaintiff had a daughter by a former marriage eleven years of age. Plaintiff testified that before the marriage the defendant had stated that he would adopt such child. This was denied by the defendant. The child never was adopted. The parties lived together at Minot from the time of their marriage until in the fall of 1944. They both worked and the defendant supported the plaintiff and her daughter except that the plaintiff from her separate earnings purchased clothes for herself and her daughter. In October 1944 the defendant went to Billings, Montana, where he went into business with his brother. The defendant testified that because of housing shortages during the war he was unable to find quarters in Billings where his wife and her daughter could live. In January 1945 the plaintiff shipped their furniture to Billings and came to Billings to live with the defendant. They first lived in a tourist cabin for about a month and then found an apartment where they lived for some nine months and were then required to vacate because the house was sold. There is no evidence and there seems to be no claim that there was any particular difficulty between them up to this time. The plaintiff claims that eventually she found another place in which they might live at Billings but defendant denies this. In December 1945 the defendant, the plaintiff and her daughter, plaintiff's sister, and the defendant's mother returned to Minot in defendant's automobile driven by him. Shortly thereafter the plaintiff brought an action for divorce against the defendant. The summons in the action was issued December 8, 1945; the complaint alleged that the defendant for several months had been irritable and that it had been impossible for plaintiff to please the defendant for said reason and that plaintiff knows of no reason for his conduct. "That it was understood by the plaintiff and defendant that defendant would come to Minot from Billings, Montana, where he has been working, to visit plaintiff over the Thanksgiving holidays. That defendant came to Minot on Sunday, November 18th and did not inform plaintiff he had arrived but on the contrary he went to his mother's home and remained there over the holidays and refused to make any explanation

for such conduct. That plaintiff talked to the defendant over the telephone on Tuesday following his arrival in Minot and asked defendant when he had come to town and he replied that he had just got in that day; that he had left Billings on Sunday and spent Sunday night in Glendive, Montana, and spent Monday night at Williston, North Dakota, but later when asked to explain how he could do that and be in Minot Sunday night, he refused to make any explanation. Plaintiff had telephoned twice to Billings, Tuesday, to find out what had happened to him and later learned that he was in Minot for the first time and when he was asked to explain he became angry and would not talk. From the foregoing conduct of defendant the plaintiff has been made sick from worry and has experienced grievous mental suffering from such conduct and that defendant is guilty of extreme cruelty." The plaintiff prayed for judgment of absolute divorce and that her former name be restored to her. There was no demand or claim for alimony or support. The defendant contested the divorce and a property settlement was made under which the plaintiff received $800 in cash and all their furniture including certain furniture which the defendant had purchased at Billings. The defendant also paid attorneys fees and costs in the action.

On her direct examination the plaintiff testified:

"Q. What happened to that action for divorce? Did you enter into a settlement at that time?

A. So far as the divorce there wasn't any settlement. It was dropped on account of my religion.

Q. What is your religion?

A. Catholic.

Q. Did you know at the time you started the divorce you would have to leave the church?

A. Yes, I did.

Q. Was there a property settlement at that time?

A. Yes, there was.

Q. And how much money?

A. $800.00."

On cross examination plaintiff testified:

"Q. At the time you made that $800.00 settlement that was shortly after you commenced your action for divorce?

A. Yes.

Q. Did you not understand that as a final and complete settlement?

A. Yes."

On re-direct examination plaintiff testified:

"Q. Final and complete up to that time and provided that the divorce went thru?

A. That is the way I understood it, and the way I wanted it."

Plaintiff further testified that she "dropped the divorce" because the defendant asked for a reconciliation. That it was her understanding that it was not a final settlement because there was a reconciliation after the settlement. The defendant contends that the settlement constituted a binding separation agreement which remains in full force and effect and that the court was not justified in awarding judgment against the defendant for alimony. The plaintiff contends that the settlement agreement was avoided because the parties subsequently resumed marriage relations. We have no means of knowing the terms of the settlement agreement other than as testified to by the parties. Neither party was able to produce the written agreement or a copy thereof although they agreed that a property settlement was made and defendant's counsel produced and introduced in evidence a copy of the summons and complaint in the divorce action which had been instituted by the plaintiff and the plaintiff admitted on her cross examination that the papers produced and received in evidence were copies of the summons and complaint in the action. The evidence does not show that there was any express agreement between the parties with respect to what disposition should be made of the divorce action, but it does show that although the parties did not live together for any particular length of time or maintain a home they did stay together as husband and wife during brief periods. The evidence also shows that the plaintiff accompanied the defendant to Minneapolis

when he made a trip there to obtain medical treatment for diabetes, also that they made a trip together apparently in the nature of a vacation trip. At the time of the trial the plaintiff was earning $40 a week as a saleslady in a department store in Minot. The plaintiff testified that the defendant was receiving about $300 per month for his services with the Great Northern Railway Company. The defendant testified that he received considerably less pay and he produced and offered in evidence his salary check for two weeks preceding the trial and such check amounted to $119.00. He further testified that the amount of such check was representative of the compensation which he generally received. The undisputed testimony shows that the defendant has an artificial limb, that he has a partially paralyzed hand and is afflicted with diabetes. He testified that one of his lower limbs was removed at the hip. He described generally the condition of such limb and stated that if he walked very much it caused pain and "would drain" and as a consequence he did "a minimum of walking." The defendant testified that some months before the trial he had an operation for the removal of the gall bladder and the appendix, and that the expense incident thereto amounted to some $500. That he was under doctor's care and was required to expend approximately $10 per month for medicine and that he also was required to contribute and did contribute some $40 to $70 a month for the support of his aged mother. He testified that he owned a 1941 Ford car for which he had been offered $450 on a trade and that he owned Series E savings bonds for which he had paid $350. The plaintiff testified that she owns an automobile, furniture and household goods in the apartment which she is occupying with her daughter, two U. S. savings bonds, one for $100 and one for $50 and some $3000 in cash the proceeds of an insurance policy which she received upon the death of her first husband. She testified that these moneys were to be used for the education of the daughter. Under the evidence the property settlement does not constitute a bar to the allowance of alimony, but such settlement is a matter to be considered in connection with all the other facts and circumstances in determining what, if any, allowance ought to be made to the plaintiff. The agree-

ment was fairly made and represented the judgment of the parties and their counsel as to payment to be made by the defendant to the plaintiff in full settlement of all claims for support and alimony. The plaintiff was represented by able counsel. The defendant has an income from his work of some $238 a month. The plaintiff has an income from her work of $40 a week. The defendant is disabled, is afflicted with diabetes, is under the care of a physician and required to expend money, and in all likelihood will be required to continue to expend money, for medicine and medical attention. He is also required to make contribution for the support of his mother. It is apparent that the defendant can not contribute any large sum for the support of the plaintiff.

After careful consideration we have reached the conclusion that the judgment appealed from should be modified by reducing the amount of such judgment in the sum of $600; and that as so modified the judgment should be affirmed.

It is therefore ordered that the judgment appealed from be modified by reducing the amount of the judgment by $600, such judgment to be paid at the rate of $25 per month commencing on the first day of November, 1950 and on the first day of each and every month thereafter until the judgment as so modified is paid. The trial court is directed to set aside the judgment appealed from and enter a new judgment conformable to this opinion.

NUESSLE, C. J., and CHRISTIANSON, GRIMSON, MORRIS and BURKE, JJ., concur.